IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| MAUREEN ALEXANDER, | }<br>} |
| Plaintiff, | }<br>} |
| v. | } CIVIL ACTION NO.<br>} 02-AR-3214-S |
| JEFFERSON COUNTY BOARD OF EDUCATION, | }<br>}<br>} |
| Defendant. | }<br>} |

FILED 04 OCT 29 AM 10: 12
U.S. DISTRICT COURT
N.D. OF ALABAMA

ENTERED
OCT 29 2004

### MEMORANDUM OPINION

Before the court is the motion of defendant, Jefferson County Board of Education ("the Board"), for summary judgment. In her complaint, plaintiff, Maureen Alexander ("Alexander"), alleged that her employer, the Board, discriminated against her because of her gender in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. 2000e *et seq*. She includes claims for alleged unlawful wage and benefit discrimination and retaliation. For the reasons that follow, the court finds that no genuine issue of material fact exists and that the Board is entitled to judgment as a matter of law. F.R.Civ.P. 56(c).

### Summary Judgment Facts

Alexander began her employment with the Board in 1978. In 1987, Alexander was promoted to the position of supervisor in the Child Nutrition Program, a position within the Central Office of the Board. In October 1993, Alexander was promoted within the Central Office to the position she currently holds, Director of the



Child Nutrition Program. As her title suggests, Alexander is ultimately responsible for the nutritional programs of the all the schools under the Board's authority, with her specific responsibilities to include intermittent travel between the various schools in the Jefferson County system to observe and supervise operations.

Alexander has testified that, shortly after her promotion in 1993, she noticed that she was being paid on a different "salary schedule than the men." Alexander Depo. p. 56. She continually complained to her immediate supervisors about what she perceived to be inequities in her salary structure, asking that the issue be reviewed and corrected. Alexander never referred to her gender as a basis for these perceived inequities, certainly not in writing. Instead, she stated that her pay was not commensurate with that of other directors whose responsibilities were comparable to hers.

In 1997, at the behest of then Superintendent of the Jefferson County School System, Dr. Bruce Wright ("Wright"), the Board reorganized its Central Office structure. Following this reorganization, in November 1997, Alexander sent a memo to Deputy Superintendent Yancy Morris ("Morris"), renewing her request for a salary re-evaluation. On August 27, 1998, the Board adopted a reclassification of directors' salaries that brought increased parity to the salaries paid to various directors. This reclassification resulted in a roughly $10,000 raise for Alexander,

2

and she felt like the Board had made a good faith effort to bring equity to the directors' salary schedule. Alexander Depo. p. 265, Ex. 18. The Board exempted five directors' positions from this new pay schedule, among them a new Federal Programs Director position, which was filled by a woman who was compensated on a higher salary schedule.

From 2000 until 2003, the Board was under state financial intervention due to severe financial difficulties. Throughout this period, the Board was forced to make every effort to cut costs; and in April 2000, it voted to terminate over 200 employees effective at the end of the 1999-2000 school year. In the midst of this financial crisis, Alexander renewed her complaint about disparate compensation she thought she was receiving, again without reference to gender discrimination. Specifically, in a memo dated June 27, 2000, she referred to the new Federal Programs Director position as comparing "very favorably" in terms of responsibilities to her own job. In a letter dated October 18, 2000, Alexander again stated that the higher rank and salary assigned to the Federal Programs Director position was the "basis for my current request for reclassification."

Dr. Bobby Neighbors ("Neighbors"), Superintendent of the Jefferson County school system from 2000-2003, knew of Alexander's repeated complaints regarding her salary. In November 2001, Neighbors circulated an e-mail to school principals within the

3

system regarding a rumor about raises for Central Office staff. Neighbors denied the rumor, and he went on to state:

> "[w]e do think we have some inequities in the central office salaries at the director level; however, I don't have any plans to correct that at this time." Pl. Ex. 10.

Neighbors' e-mail did not specifically state the basis for his belief, and there is no evidence to indicate he was referring to a gender gap in salaries and/or benefits.

On January 24, 2002, Alexander filed her EEOC charge, alleging gender discrimination in the salary and benefits she received compared to those received by male directors. One week later, Alexander referred to gender discrimination for the first time in a written communication to her supervisors. Specifically, on January 31, 2002, Alexander stated in a letter to Morris that:

> "[s]ince 1997, I have spoken with you about the lack of equity in my pay and benefits compared to male counterparts who hold director positions. Prior to that, I identified these issues with the previous administrations. The current administration has also failed to respond to these inequities." Pl. Ex. 11.

Alexander received a right to sue letter from the EEOC in October 2002, and filed her complaint in this court on December 30, 2002.

### Analysis

This case is the culmination of Alexander's decade long struggle to obtain what she felt would be fair compensation for her work in the Child Nutrition Program. Whether her compensation is fair or not is a question for some other forum. Her plea for

4

higher pay does not constitute an actionable Title VII claim. Alexander may well be justified in believing that she is entitled to greater compensation, but a federal court's task is not to sit as a super-personnel agency to review the Board's wage and benefit determinations. Viewing the record in the light most favorable to Alexander, there is no substantial evidence to create a triable issue of fact regarding whether Alexander's salary and benefits had anything to do with her gender.

In particular, Alexander's evidence fails to create an issue that the Board's legitimate non-discriminatory reasons are pretextual. As for her retaliation claims, she presents insufficient evidence to establish that there was any adverse employment action against her.

*The Gender-Based Wage and Benefit Discrimination Claim*

Alexander claims that she received less compensation than her male counterparts due to her gender.[1] To establish a *prima facie* case of gender-based wage discrimination based on circumstantial evidence under Title VII, a plaintiff must show that the job she occupies is similar to that of higher paid males.[2] *See Miranda v.*

---

[1] Specifically, Alexander argues that she was paid a lesser salary than certain male directors and that she was not given a state owned vehicle to drive, unlike certain male directors.

[2] To prove a Title VII claim, Alexander must show that the Board had the requisite intent to discriminate by either direct or circumstantial evidence. *See Batey v. Stone*, 24 F.2d 1330, 1334 (11th Cir. 1994). Alexander claims that Neighbors' e-mail coupled with his knowledge of her salary complaints provides "direct evidence" of discrimination. This characterization of the evidence is clearly out of step with the legal standard for direct evidence, and the court recognizes that this is a typical case where the plaintiff must

*B&B Cash Grocery Store, Inc.*, 975 F.2d 1518, 1529 (11th Cir. 1992). Once a *prima facie* case is established, defendant must articulate a legitimate, non-discriminatory reason for the pay disparity. *Id.* at 1528. The plaintiff must then show that it is more likely than not that the legitimate reason offered was a mere pretext for an illegal motive. In this analysis, proof of discriminatory motive is critical, although it can "in some circumstances be inferred from the mere fact of differences in treatment." *Id.*

Alexander points to several alleged higher-paid male comparators, including Eddie Brown (Director of Support Operations), Steve Smith (Director of Database Management), Lawrence Carter (Director of Human Resources), Byron Campbell (Director of Information Systems), Ken Moses (Director of Storage and Distribution), and Rafael McDaniel (Director of Ketona Operations/New Construction). While a plaintiff need not demonstrate substantial equality between her job and a higher paid male's position, she must do more than draw conclusions that the jobs carry responsibilities of similar weight. Alexander goes to great lengths to demonstrate that her job duties are equal to or greater than each of these comparators, but for the most part she fails to provide concrete examples of *similar* duties that she fulfills vis-á-vis these alleged comparators.

---

rely on circumstantial evidence to prove discrimination. Accordingly, the following analysis proceeds under the so-called *McDonnell Douglas* framework. *Miranda*, 975 F.2d at 1528.

Nonetheless, the court will concede *arguendo* that Alexander has narrowly established a *prima facie* case by showing that her driving duties are similar to those of male directors. It is undisputed that her duties include the need to "intermittently" drive between the various schools in the system. Alexander is compensated for her mileage, while other male (and female) directors are given state vehicles to fulfill their driving duties. Testimony indicates that the Board uses no set criteria for deciding which directors get vehicles to drive, and Alexander's driving-related duties appear to be similar to those of male directors who are given vehicles. Thus, Alexander may have established a *prima facie* case in that she was not given a benefit that similarly situated males got.

The Board has presented clear and specific legitimate reasons for the differences in compensation between Alexander and each of her male alleged comparators. *See Miranda*, 975 F.2d at 1529 (defendant's burden in rebutting *prima facie* case is "exceedingly light"). Having satisfied its burden of production, the burden returns to Alexander to demonstrate pretext. Put another way, the burden is on Alexander to show that "a discriminatory reason more likely than not motivated" the Board to pay her less or that the Board's "explanation is not worthy of belief." *Id.*

Alexander has not created a genuine issue of fact as to pretext. Her brief correctly points out that the burden for

7

creating a triable fact issue as to pretext is minimal, but even this minimal burden requires Alexander to produce some evidence as to why the Board's legitimate reasons should be disbelieved. *See Combs v. Plantation Patterns*, 106 F.3d 1519, 1529 (11th Cir. 1997)("[d]isbelief of the defendant's proferred reasons, together with the prima facie case, is sufficient circumstantial evidence to support a finding of discrimination").

Alexander's case suffers from a complete failure to show that there is any discriminatory motive at work. She repeatedly complained to the Board about the female Federal Programs Director's compensation, and the Board is able to point to several other female directors who make more money than Alexander or the male counterparts she points to in her argument. Alexander has no answer for the Board's legitimate reasons. Alexander's pretext argument is that "defendant does not point to any evidence...that Alexander's duties and responsibilities were less important or less substantial than her male counterparts." Pl. Brief p. 20. According to Alexander, the facts "beg" the question of pretext. The court disagrees. It cannot submit Alexander's case to the jury based on pure conjecture and speculation that the Board acted with a discriminatory motive.

*The Retaliation Claim*

Alexander also claims that the Board retaliated against her in response to her opposing its unlawful employment practices and due

to her filing an EEOC charge. Her retaliation claims fail because, even assuming her protected expression motivated the events she alleges, none of those events rise to the level of an "adverse employment action" for purposes of stating a *prima facie* retaliation claim.

Alexander's only protected expression was the filing of an EEOC charge against the Board in January 2002.[3] She alleges that, subsequent to the filing of her EEOC charge, she was: (1) denied the opportunity to attend two national conferences, (2) forced to go through a superior in order to order radios that were more expensive than those ordered for employees in other departments, and (3) asked to respond to audit findings before said findings were published. Alexander correctly points out that Title VII's protection against retaliatory discrimination extends to adverse actions which fall short of ultimate employment decisions. *Wideman v. Wal-Mart Stores, Inc.*, 141 F.3d 1453 (11th Cir. 1998). Alexander's allegations, however, fall woefully short of establishing that the Board took any adverse employment action against her on account of her filing an EEOC charge.

The court notes that the Board was under state financial

---

[3] While Alexander contends that she opposed the Board's unlawful practices prior to her EEOC charge, the fact that none of her communications ever mentioned gender-discrimination negates her ability to show protected expression prior to the filing of an EEOC charge. In fact, many of Alexander's complaints were directly related to benefits paid to other *female* directors, such that those complaints, even viewed in the light most favorable to Alexander, cannot be construed as protected expression in opposition to sex discrimination.

intervention and trying to cut costs during the entire period in question. In this context, it is even more clear that refusing to send Alexander to two conferences and otherwise questioning her expenses on two occasions did not constitute adverse employment actions. Accordingly, summary judgment is appropriate on Alexander's retaliation claims.

### *Conclusion*

In light of the foregoing analysis, the court expressly holds that no genuine issue of fact exists and that the Board is entitled to judgment as a matter of law. By separate order entered contemporaneously herewith, defendant's motion for summary judgment will be GRANTED.

DONE this 29th day of October, 2004.

_____
WILLIAM M. ACKER, JR.
UNITED STATES DISTRICT JUDGE